THE CITY OF LOGANSPORT *v.* DICK, ADMINISTRATRIX, ET AL.

CITY.—*Duty of, in Control of Streets.—Liability for Injuries.—Contract.*— A city, incorporated under the general law of this State for the incorporation of cities, can not avoid the duty which it owes to the public to keep its streets, alleys and highways in a safe condition for use in the usual manner by travellers, nor escape responsibility to third persons for injuries resulting from its neglect or failure to perform such duty, upon the plea that it had entered into a contract with another person for the performance of the work which rendered such use of the street, alley or highway unsafe or dangerous to the travelling public.

SAME.—*Construction of Water Works Through Streets.*—Where such a city is engaged in the construction of a system of water-works for municipal purposes, and has entered into a contract with another person for the performance of the work, by the terms of which the exclusive control of such work rests in the contractor, such city, notwithstanding the contract, stands charged by law with a duty in the care and control of its streets, in and through which its water-works are in process of construction, to keep such streets in a safe condition for use in the usual manner; and for a breach of such duty, resulting in injury or death to a third person, it is liable in damages.

SAME.—*Nuisance.—Negligence.—Breach of Duty.—Contributory Negligence.*— The construction of water-works by a city is not a nuisance *per se,* and neither such city nor its contractor can be held liable in damages for any injury resulting therefrom, unless it can be shown that such injury was caused by some act of negligence of the contractor or his servants, or some breach of duty by the city, and that there had been no contributory negligence on the part of the injured.

SAME.—*Instruction*—An instruction to the jury, that, " As between city and citizens, any thing that endangers the life of a citizen passing along the sidewalk or street of a city, is a nuisance," is erroneous.

SAME.—*Presumption.*—Where, in an action to which a city is a party, the contrary does not appear, it is presumed that such city was incorporated under the general law of this State for the incorporation of cities.

From the Carroll Circuit Court.

*M. Winfield* and *D. C. Justice,* for appellant.

*D. P. Baldwin, D. D. Dykeman* and *L. B. Sims* for appellees.

HOWK, J.—The appellee Elizabeth Dick, administratrix of the estate of John Dix, deceased, as sole plaintiff, com-

menced this action in the Cass Circuit Court, against the appellant and Herbert R. Smith and Thomas B. Farrington, as defendants, to recover damages under the provisions of section 784 of the practice act, for the death of said John Dick, caused, as alleged, by the wrongful acts and omissions of the said defendants.

In their defence of the action, the defendants severed, and as the City of Logansport alone has appealed to this court, we shall notice only the pleadings of such appellant, in our statement of the case.

In her complaint, filed in the Cass Circuit Court, the appellee Elizabeth Dick alleged, in substance, that she was the administratrix of the estate of said John Dick, who was her husband; that on the 27th day of January, 1876, in the city of Logansport, Cass county, Indiana, her said husband, without fault on his part, and without contributing thereto, was, through the carelessness and negligence of the said defendants, killed by them; that the said defendants were at the time engaged in the construction of water-works in and for said city and the inhabitants thereof; that, at the time of the killing of her said husband, the defendants were blasting rock, in excavation, for the purpose of laying down their water-pipes, and were blasting rock in Plum street; that, while thus engaged in blasting with gunpowder, the defendants wrongfully, negligently and carelessly, so conducted their said work, by and with an improper use of gunpowder, and by their failure to provide the necessary protection to the public against such blast, that a fragment of rock, blown from the explosion, struck said John Dick on the head, thereby causing his death; that her said husband was by occupation a blacksmith, living with his family, at or near Lockport, in Carroll county, Indiana, and was a poor man, depending on his daily labor to support his family; and that, by his death, she, the plaintiff, was entirely be-

reft of any means of support for herself and her family of four small children, to her damage in the sum of five thousand dollars.    Wherefore, etc.

To this complaint the appellant demurred, for the want of sufficient facts therein; but, before the court passed upon its demurrer, the appellant filed its answer in three paragraphs, of which the first was a general denial, and the second and third paragraphs stated special defences. To the special paragraphs of the appellant's answer, the plaintiff below replied in two paragraphs.

Upon the plaintiff's application, the venue of the action was then changed to the Carroll Circuit Court.

In this latter court, the appellee Elizabeth Dick filed two additional paragraphs of complaint, to each of which the appellant's demurrer, for the alleged insufficiency of the facts therein to constitute a cause of action, was overruled by the court, and to these decisions the appellant excepted.    To all the paragraphs of the complaint, the appellant answered in four paragraphs, of which the first was a general denial, and each of the second, third and fourth paragraphs stated affirmative matters, by way of defence.    We deem it necessary to a proper understanding of the questions for decision in this case, that we should give a summary, at least, of the facts relied upon by the appellant, as its defence to the plaintiff's action, as stated in the second, third and fourth paragraphs of its answer.

In the second paragraph of its answer, the appellant alleged, in substance, that the plaintiff's intestate, John Dick, contributed to the injury which caused his death, by carelessly and negligently placing himself at or near the place where the defendants were blasting, well knowing, at the time, that the defendants were blasting rock with gunpowder and other dangerous explosive materials; that the defendants were about to discharge a blast, of

which the decedent had sufficient notice to get at a safe and secure distance; that he failed and refused to get away before danger, but remained near the blast without any business there; and that the defendants were engaged in a lawful enterprise of blasting rock in said city of Logansport. Wherefore the appellant said that the plaintiff's intestate was killed by his own negligence and carelessness contributing thereto, and the plaintiff ought not to recover.

In the third paragraph of its answer, the appellant alleged that it was a municipal corporation, in Cass county, Indiana, organized and existing under and pursuant to the laws of this State; that on the 17th day of December, 1875, the appellant made and entered into a written contract with one Deloss A. Chappel, for the construction of water-mains and pipes through and along the streets of said city as a part of the system of water-works theretofore adopted by the common council of said city, and to be built for municipal purposes; that, by the terms of said contract, the said Chappel was to complete the furnishing and laying of all the pipes and mains, and all the labor attendant thereon, for a certain and specific sum of money; that the said Chappel assigned said entire contract to the defendant Smith, who assigned and sublet it to the defendant Farrington who did the work, and had exclusive control and charge of said work, making his own selection of workmen, and employing and discharging them at his own exclusive will and pleasure; that the defendant Farrington and his employees had exclusive control over the blasting, and digging trenches and furnishing and laying the pipes; that the employees engaged in the work looked solely and exclusively to said Farrington as their employer for directions and pay; that the appellant had no choice in the selection or direction of said Farrington or of the workmen,

and had no authority to and did not employ or discharge
any of the workmen and employees, so engaged in the con-
struction of the mains, digging, excavating, blasting, etc.,
as aforesaid, and no authority to and did not direct the
manner of doing said work; that said Farrington and
his employees were engaged as aforesaid in the construction
of said water-mains, digging trenches, excavating and
blasting rock with gunpowder and other explosive mate-
rials; and that the plaintiff's intestate, John Dick, while
standing by or passing the same, was struck by a rock
projected by a blast, managed and controlled solely as
aforesaid by the said Farrington and his employees, and
was killed, and whether he was killed by the negligence
and carelessness of said Farrington and his employees, the
appellant was not informed and did not say, but averred
that the injury which said Dick received, and which re-
sulted in his death, was occasioned by no act of the appel-
lant, or its agents or employees, but solely as aforesaid.
Wherefore the plaintiff ought not to recover, and the
appellant asked judgment accordingly.

The fourth paragraph of the appellant's answer was sub-
stantially the same as the third paragraph, with some
slight changes in verbiage and phraseology, and with an
additional averment to the effect that the work of con-
structing the appellant's water- works was not of itself a
work of danger or hazard to life or property.

The plaintiff's demurrer, for the want of sufficient facts, to
the appellant's special answers, was overruled by the court,
and she then replied thereto by a general denial.

The cause was tried by a jury, and a general verdict was
returned for the plaintiff below, against the appellant and
defendant Farrington, assessing her damages in the sum
of thirty-five hundred dollars; and the jury also returned
a verdict in favor of the defendant Smith. With their
general verdict, the jury also returned their special find-

ings upon particular questions of fact submitted to them by the parties under the direction of the court, which special findings will hereafter be noticed and fully considered in this opinion.

The appellant moved the court in writing for a judgment in its favor, on the special findings of the jury, notwithstanding their general verdict, which motion was overruled by the court, and to this decision the appellant excepted.

The appellant's motion for a new trial having been overruled by the court, and its exception entered to this ruling, judgment was rendered by the court on the general verdict of the jury, in favor of the plaintiff below and against the appellant and the defendant Thomas B. Farrington; from which judgment the appellant, the City of Logansport, alone prosecutes this appeal.

In this court, the appellant has assigned as errors the following decisions of the circuit court:

1.   In overruling its demurrers to the first, second and third paragraphs of the plaintiff's complaint;

2.   In overruling its motion for a judgment in its favor on the special findings of the jury, notwithstanding their general verdict;

3.   In overruling its motion for a new trial;

4.   In overruling its motion in arrest of judgment; and,

5.   The judgment below was contrary to law and the evidence.

The plaintiff below assigned, as a cross error, that the circuit court erred in refusing, upon her motion, to require the jury to answer certain interrogatories submitted to them by her, before they retired to consider their verdict.

The first question presented and discussed by the appellant's learned counsel, in their able and exhaustive brief of this cause in this court, arises under the second alleged error, namely, the decision of the court in overruling its motion for a judgment in its favor on the special findings

of the jury, notwithstanding their general verdict. These special findings of the jury were, in substance, as follows:

"First. Had not the City of Logansport, prior to the death of John Dick, adopted a system of water-works for fire protection and other municipal purposes?

"Answer. Yes.                    J. H. JOHNSON, Foreman.

"Second. Did she not, in pursuance thereof, enter into a written contract with D. A. Chappel, of Chicago, for the erection and completion of said work for a specified sum of money, and was not said contract assigned by said Chappel to the defendant Smith, and by Smith assigned to Farrington, prior to the execution of the work and prior to the death of John Dick?

"Answer. Yes.                    J. H. JOHNSON, Foreman.

"Third. Did the City of Logansport or H. R. Smith have any thing to do with the employing or discharging or paying the men, who were engaged in the digging and excavating the trenches for the laying of the water-pipes, or the blasting of rock, or in the mode and manner of doing the work up to the death of Dick?

"Answer. No.                    J. H. JOHNSON, Foreman.

"Fourth. Did not Thomas B. Farrington, as the assignee of Smith, have full and complete control, by himself and his employees, over the manner and mode of digging and excavating the trenches, and the blasting for the pipes, and did not Farrington employ and discharge and pay the men so engaged, prior to and at the death of John Dick?

"Answer. Yes.                    J. H. JOHNSON, Foreman.

"Fifth. Was not the work of blasting rock, for excavation of the trenches for the laying of the pipes, made necessary by reason of the rock formation at various places in said city of Logansport, and at the place where the blast was made by which John Dick was killed?

"Answer. Yes, with the exception of the place where Dick was killed.                    J. H. JOHNSON, Foreman.

" Sixth. Could the blasting of rock in the city of Logansport, prior to the death of Dick, for the construction of her water-works, be done with reasonable security to life and property, if the blast was protected by rope matting and heavy timbers ?

" Answer. Yes.          J. H. Johnson. Foreman.

" Eighth. Did the city of Logansport or H. R. Smith have notice of the particular manner and mode of making the blast by which Dick came to his death ?

" Answer. Yes.          J. H. Johnson, Foreman.

" Ninth. Did the city of Logansport exercise any control over the manner or mode of making the particular blast by which Dick came to his death ?

" Answer. No.          J. H. Johnson, Foreman.

" Tenth. If Farrington and his employees, in making the blast which occasioned the death of Dick, had used the precautions that were used at other places, by protecting it with rope matting and heavy timbers, would the injury have occurred ?

" Answer. No.          J. H. Johnson, Foreman.

" Eleventh. Could the injury which caused the death of John Dick have been avoided, if Farrington and his employees had exercised greater care in making the blast and protecting it ?

" Answer. Yes.          J. H. Johnson, Foreman.

" Twelfth. Was not the alarm given by the men in charge of the blast, from three to five minutes before the explosion ?

" Answer. Yes.          J. H. Johnson, Foreman.

" Thirteenth. Was not John Dick near enough, so that, by the exercise of the senses at the time of the alarm, he could have heard it?

" Answer. No.          J. H. Johnson, Foreman.

" Fourteenth. How far away from the place where Dick

was standing when the alarm was given could he have gone before the explosion?

" Answer.   One hundred and seventy feet.

J. H. JOHNSON, Foreman.

" Seventeenth. Was not John Dick notified of the impending blast, from three to five minutes before it exploded ?

" Answer.   No.            J. H. JOHNSON, Foreman."

It is earnestly insisted by the appellant's counsel, that, upon these special findings of the jury, the appellant was clearly entitled to a judgment in its favor, notwithstanding the general verdict.   In section 337 of the practice act, it is provided, that, " When the special finding of the facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."   2 R. S. 1876, p. 172.   The question presented for our decison, therefore, by and under the second alleged error may be thus stated:   Conceding that the facts specially found by the jury are true, and we must regard them as true, can those facts be true, and the appellant be liable to the plaintiff below, under the averments of her complaint and the issues joined thereon, and on the appellant's special answers?   In other words, can the facts specially found by the jury be reconciled with those facts which the jury, under the issues, were bound to find in order to justify them, under the law, in returning their general verdict in favor of the plaintiff below, and against the appellant?   *Thompson* v. *The Cincinnati, etc., Railroad Co.,* 54 Ind. 197.   Before considering these questions, we deem it necessary to a clear and intelligible presentation thereof, that we should put together, in a connected, affirmative and narrative form, the facts of the case, as specially found by the jury in and by their answers to the interrogatories propounded to them, which we now do, as follows:

The city of Logansport had, prior to the death of John Dick, adopted a system of water-works for fire protection and other municipal purposes.   In pursuance thereof, the

city entered into a written contract with D. A. Chappel, of Chicago, for the erection and completion of said works, for a specific sum of money, which contract was assigned by said Chappel to the defendant Smith, and was assigned by said Smith to the defendant Farrington, prior to the execution of the work and prior to the death of John Dick. Neither the City of Logansport, nor said H. R. Smith, had any thing to do with the employing or discharging or paying the men who were engaged in the digging and excavating of the trenches for the laying of the water-pipes, or the blasting of rock, or in the mode and manner of doing the work, up to the death of said Dick. Thomas B. Farrington, as the assignee of said Smith, had full and complete control, by himself and his employees, over the mode and manner of digging and excavating the trenches and blasting for the pipes; and the said Farrington employed and discharged and paid the men so engaged, prior to and at the time of the death of said Dick. The blasting of rock, for excavation of the trenches for the laying of the pipes, was made necessary by reason of the rock formation at various places in said city of Logansport but not at the place where John Dick was killed. The blasting of rock in the city of Logansport, prior to Dick's death, could be done for the construction of the water-works with reasonable security to life and property, if the blast were protected by rope matting and heavy timbers. The city of Logansport or H. R. Smith had notice of making the blast by which Dick came to his death.

If Farrington and his employees, in making the blast which occasioned Dick's death, had used the precautions that were used at other places, by protecting it with rope-matting and heavy timbers, the injury would not have occurred; and, if Farrington and his employees had exercised greater care in making the blast and protecting it, the injury which caused the death of John Dick could have been avoided. The alarm was given by the men in

charge of the blast, from three to five minutes before the explosion; but at the time of the alarm John Dick was not near enough, so that, by the exercise of his senses, he could have heard it. From the place where Dick was standing when the alarm was given, he could have gone away one hundred and seventy feet. John Dick was not notified of the impending blast from three to five minutes before it exploded.

As preliminary to our examination and decision of the questions presented and discussed by the appellant's counsel under the second alleged error of the court below, namely, the overruling of the appellant's motion for a judgment in its favor on the special findings of the jury, notwithstanding their general verdict, we deem it necessary and proper that we should first direct attention to and consider, briefly at least, the powers conferred and the duties imposed, by the legislation of this State, upon the appellant as a municipal corporation, over the streets, highways and alleys within its corporate limits. The record fails to show under what law the appellant was and is incorporated; but, in such a case, it will be presumed, the contrary not appearing, that the appellant was incorporated under the general law of the State for the incorporation of cities. *The City of Logansport* v. *Wright*, 25 Ind. 512; *Lowrey* v. *The City of Delphi*, 55 Ind. 250; *The State, ex rel. The City of Columbus*, v. *Hauser*, 63 Ind. 155.

In section 61 of the general law for the incorporation of cities, approved March 14th, 1867, it is provided that the common council of such a city "shall have exclusive power over the streets, highways, alleys," etc., "within such city." 1 R. S. 1876, p. 300.

In the 26th clause of section 53 of said general law for the incorporation of cities, it is provided as follows:

"To construct and establish works for furnishing the city with wholesome water, and for the purpose of drainage of such city may go beyond the city limits and condemn

lands and materials and exercise full jurisdiction, and all the necessary power therefor; or the common council may authorize any incorporated company or association to construct such works, and in such case the city may become part stockholder in any such company or association,"—"the common council shall' have the power to enforce ordinances," for such. purposes. 1 R. S. 1876, p. 291.

But, in the 18th clause of said section 53, it is also provided, that the common council of such a city shall have the power to enforce ordinances,—"To prevent the encumbering of streets, squares, sidewalks and crossings with vehicles, or any other substance or materials whatever interfering with the free use of the same." 1 R. S. 1876, p. 290.

In section 8 of "An act to authorize the formation of companies for the construction of water-works in, and for, incorporated cities," etc., approved March 6th, 1865, it is provided, *inter alia*, that "it shall be the duty of the common council of the city in, or for which such company may propose to erect water-works, by resolution duly passed and entered upon its minutes, to grant to such company such right to the use of the streets, alleys, wharves and public grounds of such city as shall be necessary to enable such company to construct the proper works for the supply of water for the use of such city and its inhabitants: *Provided*, That the common council of such city may, in such grant, impose such just and reasonable terms, restrictions and limitations upon such company, in reference to the manner in which such streets, alleys, wharves and public grounds are to be used, *   *   * as shall be necessary to guard against the improper use of such streets, alleys, wharves and public grounds." 1 R. S. 1876, p. 331.

With this legislation in mind, we proceed now to the

consideration of the alleged inconsistency between the facts specially found by the jury and their general verdict. It may be remarked in the outset, that it is not claimed in argument by the appellant's counsel, that the jury found specially any contributory negligence by or on the part of John Dick, or any fact or facts from which such negligence could be fairly inferred, which contributed in any degree to his death. Indeed, it may well be said, we think, that the special findings of the jury entirely negative the appellant's defence, upon the ground of such contributory negligence.

The special findings of the jury showed, among other things, that, after its adoption of a system of waterworks for municipal purposes, the appellant entered into a written contract with one D. A. Chappel for the erection and completion of said works, for a specific sum of money; that this contract was assigned by said Chappel to the defendant Smith, and by said Smith to the defendant Farrington, prior to the execution of the work and to the death of John Dick; that the appellant had nothing to do with the employment, discharge or payment of the men who were engaged in digging and excavating the trenches for laying the water-pipes, or in the blasting of rock, or in the manner of doing the work, prior to the death of said Dick; and that the said Farrington had full and complete control, by himself and his employees, over the mode of digging and excavating the trenches and blasting for the pipes, and he employed, discharged and paid the men so engaged, prior to and at the time of the death of said Dick.

It is claimed by the appellant's counsel, as we understand their position and argument, that the facts thus specially found by the jury are inconsistent with their general verdict, within the meaning of the statutory provision, above quoted, in regard to such inconsistency, be-

cause they show that the death of John Dick was caused by the wrongful act or omission of the defendant Thomas B. Farrington, or of the servants of said Farrington, who at the time was exercising an independent employment, under, and as the assignee of, a written contract with the appellant, and between whom and the appellant the relation of servant and master did not at the time exist. Ordinarily, in such a case, the law seems to be well settled, that one person is not liable for the acts or negligence of another person, unless the relation of master and servant exists between them; and that, where an injury has been done by a party exercising an independent employment, the person employing him will not be liable in damages for injury or death resulting from the wrongful acts or omissions of such party, or of the servants of such party. The general rule of law, almost universally recognized in this country by the courts of last resort, seems to be that, where the work contracted for was not a nuisance *per se*, the employer of the contractor for such work will not be liable to a third person, or his representatives, for an injury or death which results from the wrongful act or omission of such contractor, or of his servants, agents or sub-contractors, in the performance of such work. *Hilliard* v. *Richardson*, 3 Gray, 349; *Linton* v. *Smith*, 8 Gray, 147; *Brackett* v. *Lubke*, 4 Allen, 138; *Barry* v. *City of St. Louis*, 17 Mo. 121; *Blake* v. *Ferris*, 5 N. Y. 48; *Pack* v. *The Mayor, etc.*, 8 N. Y. 222; *Kelly* v. *The Mayor, etc.*, 11 N. Y. 432; *Storrs* v. *The City of Utica*, 17 N. Y. 104; *McCafferty* v. *The Spuyten Duyvil, etc., Railroad Co.*, 61 N. Y. 178; *Painter* v. *The Mayor, etc.*, 46 Pa. State, 213; *Allen* v. *Willard*, 57 Pa. State, 374; *Wray* v. *Evans*, 80 Pa. State, 102; *De Forrest* v. *Wright*, 2 Mich. 368; *The City of Detroit* v. *Corey*, 9 Mich. 165; *Harper* v. *City of Milwaukee*, 30 Wis. 365; *Scammon* v. *City of Chicago*, 25 Ill. 424; *City of Springfield* v. *Le Claire*, 49 Ill. 476; *Pfau* v. *Williamson*, 63

Ill. 16; *City of Cincinnati* v. *Stone*, 5 Ohio State, 38; *Clark* v. *Fry*, 8 Ohio State, 358; *Chicago City* v. *Robbins*, 2 Black, 418; *Water Company* v. *Ware*, 16 Wal. 566; Shearm. & Redf. on Negligence, sec. 79; and Wharton on Negligence, sec. 818. This general rule of law was fully recognized, approved and acted upon by this court in the decision of the recent case of *Ryan* v. *Curran*, 64 Ind. 345.

It is insisted by the appellant's counsel, with much earnestness and ability, that the general rule of law, above enunciated, is applicable in all its force to the case made by the special findings of the jury in the cause now before us; and that, as the jury found specially, that, at the time. of the casualty which resulted in the death of John Dick, the defendant Farrington was exercising an independent employment, under a written contract with the appellant, for the construction and completion of its water-works, that the appellant had nothing to do with the employment, discharge or payment of the men engaged in the work, or with the manner of doing the work, and that the said Farrington and his employees had full and complete control of and over the manner of doing the work, and he employed, discharged and paid the men engaged in such work, prior to and at the time of the death of said Dick,—these facts thus specially found by the jury, under the general rule of law above stated, were utterly inconsistent with the appellant's liability for the wrongful acts or omissions of said Farrington and his servants, which caused the death of said Dick, and were therefore inconsistent with the general verdict of the jury against the appellant, and in favor of said Dick's representative, the plaintiff in this suit.

We can not see this matter, however, in the light in which it has been presented by the appellant's counsel. We do not doubt the liability of Farrington in damages, for the wrongful act or omission of his servants, which

caused the death of John Dick. But it seems
to us, that, in view of the exclusive power conferred,
and of the correlative duty necessarily imposed, upon
the appellant over the streets, alleys and highways,
within its corporate limits, in and by the legislation of
this State, providing for the incorporation of cities, the
appellant could·not and ought not to be allowed to
avoid the imperative duty, which it owed to the public,
to keep its streets, alleys and highways in a safe condition
for use in the usual manner by travellers, nor to escape
responsibility for its neglect or failure to perform such
duty, upon the plea that it had entered into a contract
with another person for the performance of the work,
which rendered such use of the street, alley or highway
unsafe or dangerous to the travelling public. It can not
be said, we think, that the appellant's contract with Far-
rington or his assignors, for the construction and comple-
tion of its water-works, as found by the jury, could or
did relieve the appellant of its legal duty to keep those
streets, wherein the water-pipes were being laid, in such
safe condition for use in the usual manner, as that its in-
habitants and the general public might safely and conven-
iently pass and repass over, along and across such streets.
Notwithstanding such contract, the appellant stood charged
by law with a duty, and could not relieve itself by that or
any other contract of such duty, in the care and control
of its streets, in and through which its water-works were
in process of construction. If, in the progress of the
work, blasting was dangerous and unnecessary, the appel-
lant's duty to its inhabitants and the public required that
it should prevent such blasting; and if, on the other
hand, the blasting was necessary, and, though dangerous,
the danger could be averted by the use of proper precau-
tions, the appellant's plain duty was to require its con-
tractor to use such precautions. The appellant could

not, by any contract it might make, avoid its liability to third persons for injury or death resulting from a breach of its duty in the care and control of its streets. *Grove* v. *The City of Fort Wayne*, 45 Ind. 429 ; *The Town of Centerville* v. *Woods*, 57 Ind. 192; *Mahanoy Township* v. *Scholly*, 84 Pa. State, 136.

For the reasons given, we are of the opinion, that the court committed no error in overruling the appellant's motion for a judgment in its favor on the special findings of the jury, notwithstanding their general verdict.

The appellant's counsel next complain in argument of the alleged error of the court in overruling the motion for a new trial, upon the ground that the verdict was not sustained by the evidence. The point is made and pressed with much earnestness, that the evidence wholly failed to show any such reasonable notice to the appellant of the making of the particular blast, in Plum street, which caused the death of John Dick, or of the manner in which such blast was made, as would have enabled the appellant to prevent its occurrence. The view which we shall take of the instructions of the court to the jury trying the cause, will necessarily reverse the judgment below, and perhaps lead to a new trial of the cause. For this reason it is unnecessary, and it may be improper, for us to comment upon, or to express any opinion in regard to, the evidence in the cause. We will therefore pass over the question of the sufficiency of the evidence, and proceed at once to the consideration of some of the instructions of the court, complained of by the appellant's counsel.

It is manifest, we think, from the first instruction of the court, to the effect that " A nuisance is any thing that works tort, inconvenience or damage to another," that this cause was given to the jury upon a theory that was radically wrong and well calculated to mislead the triors of the facts. For, in and by this instruction, the jury

were virtually told, as it seems to us, that the construction by the appellant of its water-works, which must of necessity have worked incovenience to others, was in and of itself a nuisance. Throughout the instructions of the court to the jury, the same theory or idea seems to be clearly manifest, and we need hardly say that it is erroneous. The construction of water-works by the appellant was not a nuisance *per se;* on the contrary, it was a work fully anthorized and provided for, as we have seen, by the law under which the appellant was incorporated. Neither the appellant nor its contractor could be held liable in damages for any injury or even death resulting from the construction of the water-works, unless it could be shown that such injury or death was caused by some act of negligence of the contractor or of his servants, or some breach of duty by the appellant, and that there had been no contributory negligence by the person injured or deceased.

The second instruction of the court was as follows : " As between city and citizens, any thing that endangers the life of a citizen, passing along the sidewalk or street of a city, is a nuisance." We are of the opinion that this instruction does not contain a true statement of the law. In the crowded thoroughfares of a large city, the rapid passage to and fro of street cars and other vehicles often endangers the life and limb of the passing citizen, and yet these cars and vehicles can not be termed nuisances. Other illustrations might be given, if necessary, of the erroneous character of this instruction, but they will readily suggest themselves.

We pass to the fifth instruction, which reads as follows : " If you find that the city of Logansport let the construction of her water-works to Smith or Farrington, and knew that it would become necessary to blast rock in the public highways of said city, and failed. in her contract, to take the precautions necessary to protect her citizens against

danger resulting from such blastings, to impose on such contractors regulations and restrictions to guard against such dangers, and if afterward, when the city's attention was called to such danger, she failed to take proper steps to abate or prevent the same, and John Dick was killed by such blasting, without fault on his part, the city is liable for such loss of life."

It will be observed, that this instruction is founded upon the theory, that the construction by the appellant of its water-works, if it knew that blasting might become necessary in its public highways, and failed to insert necessary precautions in its contract, was a nuisance *per se*, and that the appellant was liable in any event, if it did not upon notice abate or prevent the nuisance, for the death of John Dick. The instruction does not, we think, contain a correct statement of the law. The construction of the water-works was not a nuisance *per se*, even if the appellant knew that blasting might become necessary in the progress of the work, and failed to insert necessary precautions in its contract; and yet the jury were told in this instruction, that, if these facts existed, the appellant would be liable for the death of John Dick, without any reference whatever to the question of the negligence of the contractor and his servants, and even though they might have used all proper care and precaution in making the fatal blast. That instruction, in our, opinion, is not the law.

In the seventeenth instruction, the jury were informed that " The plaintiff may recover, notwithstanding his own negligence exposed him to the injury, if the defendant, after becoming aware of the plaintiff's danger, failed to use ordinary care to avoid injuring the plaintiff." We need hardly say that this instruction was clearly erroneous ; for it is directly counter to an almost unbroken line of the decisions of this court. The law must be re-

garded as settled in this State, that, where one sues to recover damages for an injury resulting from the defendant's negligence, there can be no recovery, if the negligence of the injured party contributed to the injury complained of. *Higgins* v. *The Jeffersonville, etc., R. R. Co.*, 52 Ind. 110; *Louisville, etc., R. R. Co.* v. *Boland*, 53 Ind. 398; *Jonesboro, etc., Turnpike Co.* v. *Baldwin*, 57 Ind. 86.

Other instructions of the court are complained of by the appellant's counsel, but we deem it unnecessary, in view of what we have already said, to extend this opinion in an examination of any of those instructions. For the reasons given, we are of the opinion that the court erred in its instructions above set out, and that, for this error of law, the appellant's motion for a new trial ought to have been sustained.

This conclusion renders it unnecessary for us to consider now any of the other alleged errors.

The judgment is reversed, at the costs of the appellee Elizabeth Dick, administratrix, etc., to be levied of the assets of the estate of John Dick, deceased, and the cause is remanded, with instructions to sustain the motion for a new trial, and for further proceedings in accordance with this opinion.